UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

FRANCISCO PASCUAL, ENELDINA PASCUAL,
JOSE LUIS PASCUAL, MARCELO PASCUAL,
SERGIO PASCUAL, ELVIS VANEGAS, MARTA
MANSILLA, GUSTAVO GUERRA, and EDGAR
FERNANDO DUARTE,

                    Plaintiffs,

     v.

THREE DIAMOND DINER CORP. d/b/a MOUNT
KISCO DINER, PHOTIOS GEORGIOU a/k/a
FRANK GEORGIOU, CHARALAMBOS
GEORGIOU a/k/a HARRY GEORGIOU, and
PANAYIOTA GEORGIOU a/k/a YIOTA
GEORGIOU,

                    Defendants.

No. 21-CV-3333 (KMK)

OPINION & ORDER

---

Appearances:

Maureen Hussain, Esq.
Cristina Brito, Esq.
Laura Lee Revercomb, Esq.
Worker Justice Center of New York
Hawthorne, NY
*Counsel for Plaintiffs*

Mercedes Colwin, Esq.
Dahn A. Levine, Esq.
David J. Grech, Esq.
Francis J. Giambalvo, Esq.
Gordon Rees Scully Mansukhani, LLP
New York City, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

       Edgar Fernando Duarte ("Duarte"), Gustavo Guerra ("Guerra"), Marta Mansilla

("Mansilla"), Eneldina Pascual ("E. Pascual"), Francisco Pascual ("F. Pascual"), Jose Luis

Pascual ("J. Pascual"), Marcelo Pascual ("M. Pascual"), Sergio Pascual ("S. Pascual"), and Elvis Vanegas ("Vanegas"; collectively, "Plaintiffs") brought this Action against their former employer, Mt. Kisco Diner (the "Diner"), the Diner's chief executive officer and part-owner Frank Georgiou ("F. Georgiou"), general manager Harry Georgiou ("H. Georgiou"), and part-owner Panayiota Georgiou ("P. Georgiou"; collectively, "Defendants"), pursuant to, as relevant here, the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201 *et seq.*, the New York Labor Law ("NYLL"), § 190 *et seq.*  (*See generally* Compl. (Dkt. No. 1).)[1]  The Parties now seek approval of their proposed settlement (the "Settlement Agreement" or "SA").  (Letter from Maureen Husain, Esq. to Court (April 27, 2022) ("Letter") Ex. A ("SA") (Dkt. Nos. 71, 71-1).).  For the reasons that follow, the Parties' Application is granted.

## I.  Background

### A.  Factual Background

Plaintiffs are former waiters, bussers, and dishwashers at the Diner, an upscale restaurant in Mt. Kisco, New York.  (Compl. ¶ 1.)  F. Pascual worked at the Diner from 1995 to 2020. (*Id*. ¶¶ 71, 83.)  E. Pascual worked at the Diner from 2011 until 2020.  (*Id*. at ¶¶ 84, 95.)  J. Pascual worked at the Diner from 2003 to 2020.  (*Id*. at ¶¶ 96, 105.)  M. Pascual worked at the Diner from 2003 to 2020.  (*Id*. at ¶¶ 106, 114.)  S. Pascual worked at the Diner from 2019 to 2020.  (*Id*. at ¶¶ 115, 125.)  Vanegas worked at the Diner from 2015 to 2020.  (*Id*. at ¶¶ 126, 138.)  Mansilla

---

[1] Plaintiffs also allege claims for discrimination under 42 U.S.C. § 1981 and discrimination and retaliation under New York Human Rights Law, Executive Law § 290, *et seq*. Under *Cheeks*, the Court is not required to review the aspects of the settlement related to these claims.  *See Chowdhury v. Brioni Am., Inc.*, No. 16-CV-344, 2017 WL 5953171, at *5 (S.D.N.Y. Nov. 29, 2017) ("Plaintiffs' discrimination claims, unlike their FLSA claims, do not require judicial approval.").  However, the Court has considered the inclusion of those claims in the Settlement Agreement where relevant to assessing the settlement of Plaintiffs' FLSA and NYLL claims.

worked at the Diner from 2014 to 2017.  (*Id*. at ¶¶ 139, 156.)  Guerra worked at the Diner from 2005 to 2016.  (*Id*. at ¶¶ 157, 167.)  Duarte worked at the Diner from 2017 to 2020.  (*Id*. at ¶¶ 168, 178.)

Plaintiffs have asserted various wage and hour violations.  They allege that Defendants knowingly and willfully: (i) failed to pay them a lawful minimum wage and overtime compensation in violation of the FLSA and NYLL, (*id.* ¶¶ 2, 7, 75, 77, 89–90, 99, 101, 108–09, 118–20, 130, 132–33, 135, 149, 169–70, 172–73, 190–96, 160–62, 204–09); (ii) failed to pay a "spread of hours" premium for each day Plaintiffs worked a shift over 10 hours, in violation of the NYLL, (*id.* ¶¶ 2, 150, 210–12); and (iii) violated various provisions of the NYLL by failing to provide regular wage statements and related notices, by making improper deductions from their pay, and by failing to reimburse Plaintiffs for uniform cost and maintenance (*id.* ¶¶ 79–81, 92–93, 102–103, 111–12, 122–23, 136–37, 152–55, 164–66, 175–77, 216–23).  Plaintiffs F. Pascual, E. Pascual, J. Pascual, M. Pascual, S. Pascual, and Duarte additionally allege that Defendants retaliated against them in violation of the FLSA and NYLL.  (*Id.* ¶¶ 2, 7, 179–89, 200–03, 228–31.)  Finally, Plaintiffs F. Pascual, E. Pascual, J. Pascaul, M. Pascual, and S. Pascual allege that Defendants failed to pay them timely in violation of the FLSA and NYLL.  (*Id.* ¶¶ 82, 94, 104, 113, 124, 197 –199, 224–227.)  Accordingly, Plaintiffs have sought to recover unpaid wages, unpaid overtime compensation, unpaid "spread of hours" premiums, and other damages.  (*Id.* ¶¶ 190–231.)  They also have sought liquidated damages, pre- and post-judgment interest, and attorney fees and costs.  (*Id.*)

B.  Procedural History

Plaintiffs filed this action on April 15, 2021.  (*See generally* Compl.).  On July 2, 2021, after requesting and receiving two extensions from the Court, Defendants filed their Answer.

3

(*See* Dkt. No. 19.)  The Parties submitted a proposed case management plan on July 30, 2021.

(*See* Dkt. No. 30.)  The Court held a conference on August 2, 2021, where it approved the case

management plan.  (*See* Dkt. (minute entry for August 2, 2021), Dkt. No. 25.)  On August 30,

2021, the Parties filed a joint letter requesting a referral to mediation, and the Court declared the

Action eligible for mediation the same day.  (*See* Dkt. Nos. 27, 28.)  On December 7, 2021,

Plaintiffs submitted a letter concerning discovery disputes, and the Court referred the case to

Magistrate Judge Andrew Krause on December 8, 2021.  (*See* Dkt. Nos. 31, 32.)  On January 24,

2022, the Parties entered a stipulation that Defendants were subject to enterprise coverage under

the FLSA; Plaintiffs would seek only "garden variety" damages with respect to emotional

distress; Defendants would make no inquiry into Plaintiffs' psychological records or treatment

unless proffered by Plaintiffs; and Plaintiffs would not offer records of medical or psychological

treatment, the testimony of medical care providers or psychological care providers, or expert

evidence on medical or psychological treatment or care.  (*See* Dkt. No. 44.)  On March 4, 2022,

the Parties submitted a letter informing the Court that they had reached an agreement in

principle.  (*See* Dkt. No. 59.)  On April 27, 2022, the Parties submitted their settlement papers

for the Court's approval pursuant to *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d

Cir. 2015).  (*See* Letter; SA.)

## II.  Discussion

### A.  Standard of Review

Under Fed. R. Civ. P. 41(a)(1)(A), a plaintiff's ability to dismiss an action without a court

order is made "[s]ubject to . . . any applicable federal statute."  "Except as provided in Rule

41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that

the court considers proper."  *See* Fed. R. Civ. P. 41(a)(2).  The Second Circuit has confirmed that

the FLSA is an "applicable federal statute," such that "Rule 41(a)(1)(A)(ii) stipulated dismissals settling FLSA claims with prejudice require the approval of the district court or the [Department of Labor] to take effect."  *Cheeks*, 796 F.3d at 206.  Consequently, "the [P]arties must satisfy the Court that their agreement is 'fair and reasonable.'"  *Penafiel v. Rincon Ecuatoriano, Inc.*, No. 15-CV-112, 2015 WL 7736551, at *1 (S.D.N.Y. Nov. 30, 2015) (citation omitted); *see also Velasquez v. SAFI-G, Inc.*, 137 F. Supp. 3d 582, 584 (S.D.N.Y. 2015) (same); *Briggs v. DPV Transportation, Inc.*, No. 21-CV-6738, 2021 WL 6111917, at *2 (S.D.N.Y. Dec. 27, 2021) (same).

When assessing a proposed settlement for fairness, there is generally "a strong presumption in favor of finding a settlement fair, as the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement."  *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) (citation and quotation marks omitted); *see also Matheis v. NYPS, LLC*, No. 13-CV-6682, 2016 WL 519089, at *1 (S.D.N.Y. Feb. 4, 2016) (same); *Souza v. 65 St. Marks Bistro*, No. 15-CV-327, 2015 WL 7271747, at *4 (S.D.N.Y. Nov. 6, 2015) (same); *Martinez v. Hilton Hotels Corp.*, No. 10-CV-7688, 2013 WL 4427917, at *1 (S.D.N.Y. Aug. 20, 2013) (same).

As a number of courts have recognized, although a court should consider the totality of the circumstances, the most significant factors include:

> (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

*Zamora v. One Fifty Fifty Seven Corp.*, No. 14-CV-8043, 2016 WL 1366653, at *1 (S.D.N.Y. Apr. 1, 2016) (citation omitted); *see also Garcia v. Jambox, Inc.*, No. 14-CV-3504, 2015 WL

2359502, at *2 (S.D.N.Y. Apr. 27, 2015) (same); *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d

332, 335 (S.D.N.Y. 2012) (same).  Conversely, factors which weigh against finding a settlement

fair and reasonable include:

> (1) the presence of other employees situated similarly to the claimant; (2) a
> likelihood that the claimant's circumstance will recur; (3) a history of FLSA non-
> compliance by the same employer or others in the same industry or geographic
> region; and (4) the desirability of a mature record and a pointed determination of
> the governing factual or legal issue to further the development of the law either in
> general or in an industry or in a workplace.

*Wolinsky*, 900 F. Supp. 2d at 336 (citation and quotation marks omitted); *see also Villalva-*

*Estrada v. SXB Rest. Corp.*, No. 14-CV-10011, 2016 WL 1275663, at *2 (S.D.N.Y. Mar. 31,

2016) (same); *Jambox*, 2015 WL 2359502, at *2 (same); *Camacho v. Ess-A-Bagel, Inc.*, No. 14-

CV-2592, 2014 WL 6985633, at *2 (S.D.N.Y. Dec. 11, 2014) (same).

Making this determination "is thus an information intensive undertaking," *Camacho*,

2014 WL 6985633, at *2, and "the [P]arties must provide the [C]ourt with enough information to

evaluate the bona fides of the dispute," *Gaspar v. Pers. Touch Moving, Inc.*, No. 13-CV-8187,

2015 WL 7871036, at *1 (S.D.N.Y. Dec. 3, 2015) (citation and quotation marks omitted).[2]  To

this end, courts require information surrounding

> the nature of [the] plaintiffs' claims, . . . the litigation and negotiation process, the
> employers' potential exposure . . . to [the] plaintiffs . . . , the bases of estimates of
> [the] plaintiffs' maximum possible recovery, the probability of [the] plaintiffs'
> success on the merits, and evidence supporting any requested fee award.

*Id.* (first alteration in original) (quotation marks omitted) (quoting *Nights of Cabiria*, 96 F. Supp.

3d at 176).

---

[2] This approach is consistent with the requirement that "FLSA settlements . . . not be
confidential," in part because "sealing FLSA settlements from public scrutiny could thwart the
public's independent interest in assuring that employees' wages are fair."  *Lopez v. Nights of
Cabiria, LLC*, 96 F. Supp. 3d 170, 177–78 (S.D.N.Y. 2015) (citation and alteration omitted).

B.  Analysis

    1.  Whether Settlement Amount is Fair and Reasonable

The Court finds that the settlement sum is fair and reasonable.  Under the SA, Defendants agreed to pay $856,250 (the "Settlement Amount") to resolve Plaintiffs' claims.  (SA ¶ 3; Letter 1.)  Of the Settlement Amount, $114,719.90 will go to F. Pascual, $128,434.76 will go to E. Pascual, $100,934.60 will go to J. Pascual, $122,107.34 will go to M. Pascual, $70,975.10 will go to S. Pascual, $89,685.38 will go to Vanegas, $49,771.50 will go to Mansilla, $60,943.05 will go to Guerra, $98,264.67 will go to Duarte, and $20,413.70 will go to Plaintiffs' counsel for fees and costs.  (SA ¶ 3; Letter 2–3.)  Thus, Plaintiffs' net settlement—after the deduction of attorney fees and costs—is $835,836.30.[3]

Plaintiffs estimate they are owed approximately $2,860,378.81 in unpaid minimum wages, overtime compensation, illegal deductions, uniform purchase and care, and liquidated damages.  (Letter 3.)[4]  The Parties reached this conclusion from "records produced by Defendants in discovery, which exceeded 5,400 pages and Plaintiffs' best recollection of hours worked and wages paid."  (*Id.*)  A net recovery of $835,836.30 would represent 29% of Plaintiffs' total alleged damages.  If they chose to move forward instead of settling, Plaintiffs point out that they would face considerable litigation risk on their retaliation and discrimination claims, which are a large component of the Settlement Amount.  (*See id*. at 5.)  Additionally,

_____

[3] Courts evaluate the fairness of a plaintiff's recovery after deducting attorney fees and costs.  *See Arango v. Scotts Co., LLC*, No. 17-CV-7174, 2020 WL 5898956, at *3 (S.D.N.Y. Oct. 5, 2020); *Zorn-Hill v. A2B Taxi LLC*, Nos. 19-CV-1058, 18-CV-11165, 2020 WL 5578357, at *4 (S.D.N.Y. Sept. 17, 2020); *Garcia v. Cloister Apt Corp.*, No. 16-CV-5542, 2019 WL 1382298, at *2 (S.D.N.Y. Mar. 27, 2019).

[4] The Parties provided the Court with both a "maximum" and a "moderate" amount of potential damages.  (*See* Letter 3.)  The Court here relies on the "maximum" estimate, as it provides the most optimistic scenario for recovery on the allegations and thus a more difficult standard against which to measure the proposed settlement's reasonableness.

Defendants have produced records that undermine Plaintiffs' wage and hour and overtime theories.  (*Id.*)  The Court finds that, given these risks, the settlement amount is reasonable.  *See Redwood v. Cassway Contracting Corp.*, No. 16-CV-3502, 2017 WL 4764486 at *2 (S.D.N.Y. Oct. 18, 2017) (holding that net settlement of 29.1% of FLSA plaintiffs' maximum recovery is reasonable); *Rodriguez-Hernandez v. K Bread & Co.*, No. 15-CV-6848, 2017 WL 2266874, at *4–5 (S.D.N.Y. May 23, 2017) (approving settlement sum representing 26% of potential damages as reasonable); *Felix v. Breakroom Burgers & Tacos*, No. 15-CV-3531, 2016 WL 3791149, at *2 (S.D.N.Y. Mar. 8, 2016) (approving settlement amount of less than 25% of the maximum possible recovery).

### 2.  Good Faith

 The Court is satisfied that the Settlement Agreement was negotiated competently, in good faith, at arm's length, and that there was no fraud or collusion.  (*See* Letter 8 (noting that "[c]ounsel for both parties are experienced lawyers and negotiated . . . in good faith and at arm's length, with the assistance of Magistrate Judge Krause")).

### 3.  Similarly Situated Plaintiffs

Plaintiffs are "family members of a plaintiff in a recently-settled prior litigation" against the Diner, but neither the Court nor the Parties are aware of any similarly situated plaintiffs at the present time.  (*See* Compl. ¶ 180.)

### 4.  Release Provision

"[T]he FLSA is a uniquely protective statute," *Cheeks*, 796 F.3d at 207, and courts will not approve settlement agreements that contain overly broad release provisions that would "waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues," *id*. at 206 (quotation

marks omitted) (quoting *Nights of Cabiria*, 96 F. Supp. 3d at 181); *see also Lazaro-Garcia v. Sengupta Food Servs.*, No. 15-CV-4259, 2015 WL 9162701, at *2 (S.D.N.Y. Dec. 15, 2015) ("If the parties wish to obtain approval of their settlement, any release provision must be limited to the claims at issue in this action."); *Gonzales v. Lovin Oven Catering of Suffolk, Inc.*, No. 14-CV-2824, 2015 WL 6550560, at *3 (E.D.N.Y. Oct. 28, 2015) (rejecting a settlement agreement where "the parties' release language . . . include[d] 'actions and/or claims against the [d]efendants, known or unknown, which [the plaintiff] may have as of the date of this [a]greement including but not limited to any alleged violation of any federal, state or local law, regulation, rule or ordinance which relates in any way to [the] [d]efendants' payment of wages to [the] [p]laintiff during [the] [p]laintiff's employment with [the] [d]efendants'"); *Flood v. Carlson Rests. Inc.*, No. 14-CV-2740, 2015 WL 4111668, at *2 (S.D.N.Y. July 6, 2015) (rejecting a settlement agreement that, in effect, "waive[d] any possible claims against [the] [d]efendants—including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues"). To that end, releases must generally be limited to wage and hour issues, *see Cheeks*, 796 F.3d at 206, and "may include claims not presented and even those which could not have been presented, but only when the released conduct arises out of the identical factual predicate as the settled conduct," *Nights of Cabiria*, 96 F. Supp. 3d at 181 (citation and quotation marks omitted).

Here, the Settlement Agreement release provides in relevant part that "Plaintiffs . . . irrevocably and unconditionally release . . . any . . . claims . . . [they] had, now have, or in the future may or could have . . . arising out of or relating to any matter of Plaintiffs' employment up to the Effective Date of this Agreement." (SA ¶ 5.) This release is quite broad and reaches beyond Plaintiffs' wage and hour claims to "any matter of Plaintiffs' employment up to the

Effective Date of this Agreement."  (SA ¶ 5).  However, the Court finds that the release is

appropriate under the unique circumstances of this case because the Parties have submitted a

settlement that addresses both FLSA and non-FLSA claims related to Plaintiffs' employment.[5]

The Settlement Agreement alleges, in addition to standard wage and hour allegations, claims for

failure to reimburse uniform maintenance, racial discrimination, and retaliation that occurred

during the course of Plaintiffs' employment (Compl. ¶¶ 216–219, 224–245), so the broader

language used here is permissible, as "the released conduct arises out of the identical factual

predicate as the settled conduct," *Nights of Cabiria*, 96 F. Supp. 3d at 181.  The Court approves

the release.

---

[5] The Court has been unable to locate another case in this District where the parties submitted a similar settlement agreement that contained both FLSA claims and federal and state discrimination claims.

Several courts have analyzed bifurcated settlements where the parties negotiated separate settlements for FLSA and non-FLSA claims and have taken various positions on the permissibility of this approach and its impact on the *Cheeks* review.  *See Pavone v. Diesel U.S.A., Inc.*, No. 21-CV-5219, 2022 WL 1177344, at *2 (S.D.N.Y. Mar. 2, 2022) ("In this Circuit, district courts' approaches to bifurcation of settlement have varied; some courts permit bifurcated settlements, while others require parties to submit the non-FLSA settlement for court review.") (citations omitted); *Doe v. Solera Cap. LLC*, No. 18-CV-1769, 2021 WL 568806, at *1 (S.D.N.Y. Jan. 20, 2021) ("[W]here the parties enter into bifurcated settlement agreements to dismiss the suit with prejudice—in which one agreement resolves the FLSA claims and the other all non-FLSA claims—a court must take into account at least the existence of the non-FLSA settlement in assessing the reasonableness of the FLSA settlement.") (citation omitted); *Torres v. Mc Gowan Builders*, No. 18-CV-6099, 2020 WL 5369056, at *2 (E.D.N.Y. Sept. 8, 2020) (collecting cases).  The Second Circuit has not yet addressed whether the bifurcated settlement approach is permissible under *Cheeks*.  *See Fisher v. SD Prot. Inc.*, 948 F.3d 593, 607 n.12 (2d Cir. 2020) ("We do not have such a bifurcated settlement before us and thus we do not decide whether the settlement of state law claims paired with FLSA claims requires judicial approval.").

However, the approach taken by the Parties here is unexceptionable as the Court can complete a *Cheeks* review of the entire Settlement Agreement that takes into account, where necessary, the non-FLSA claims.

### 5.  Non-Disparagement Clause

The Court finds that the Settlement Agreement's mutual non-disparagement clause is reasonable.  In this clause, Plaintiffs "agree that, at all times following the Effective Date of this Agreement, they shall not publish or communicate publicly to any person or entity, or direct others to publish or communicate to any person or entity, any Disparaging Remarks concerning Defendants."  (SA ¶ 6(a).)  However, the clause also contains a carve-out:

> Plaintiffs shall not be deemed to be in breach of this provision, however, by providing truthful testimony to any court or governmental agency or in response to any subpoena. . . . Truthful statements about the nature of the case, the settlement of the case, and the Parties' experiences in litigating their claims and defenses in the Action shall not be deemed to be Disparaging Remarks under . . . this paragraph.

(*Id.*)  Non-disparagement clauses are valid, so long as they contain such a carve-out.  *Chandler v. Total Relocation Servs., LLC*, No. 15-CV-6791, 2017 WL 3311229, at *4 (S.D.N.Y. Aug. 2, 2017); *Nights of Cabiria*, 96 F. Supp. 3d at 180 n.65.  Thus, the Court approves the non-disparagement clause.

### 6.  Attorney Fees

Under both the FLSA and NYLL, a successful plaintiff—including one who settles—is entitled to attorney fees.  *See Lizondro-Garcia v. Kefi LLC*, No. 12-CV-1906, 2015 WL 4006896, at *2 (S.D.N.Y. July 1, 2015) (citing, inter alia, 29 U.S.C. § 216(b), NYLL §§ 198, 663(1)).  Although courts may elect to award fees by considering either the lodestar method—the reasonable hourly rate of the attorney multiplied by the number of hours reasonably expended—or the percentage method—a percentage of the total amount recovered by the plaintiffs—"[t]he trend in [the Second] Circuit is toward the percentage method."  *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005).  But even where attorneys' fees are sought pursuant to the percentage of the fund method, "counsel must submit evidence providing a

factual basis for the award." *Wolinsky*, 900 F. Supp. 2d at 336; *see also Guareno v. Vincent Perito, Inc.*, No. 14-CV-1635, 2014 WL 4953746, at *2 (S.D.N.Y. Sept. 26, 2014) ("Counsel must provide a factual basis for a fee award, typically with contemporaneous time records."). A proper fee request thus includes "contemporaneous billing records documenting, for each attorney, the date, the hours expended, and the nature of the work done." *Nights of Cabiria*, 96 F. Supp. 3d at 181. The Court must also determine the reasonableness of the hourly rate by considering the "prevailing market rate for lawyers in the district in which the ruling court sits." *Anthony v. Franklin First Fin., Ltd.*, 844 F. Supp. 2d 504, 507 (S.D.N.Y. 2012).

Here, Plaintiffs' counsel seeks an award of $20,413.70, (Letter 10), which is approximately 2% of the Settlement Amount.[6] The Court finds this to be a reasonable award, as courts in the Second Circuit routinely award attorney fees in FLSA settlements of as much as one-third of the total recovery. *See Zorn-Hill*, 2020 WL 5578357, at *6 (collecting cases); *Garcia v. Atlantico Bakery Corp.*, No. 13-CV-1904, 2016 WL 3636659, at *1 (S.D.N.Y. June 29, 2016) ("[O]ne-third of the total award is the customary contingency percentage in FLSA cases."); *see also Ocasio v. Big Apple Sanitation, Inc*., No. 13- CV-4758, 2016 WL 5376241, at *2 (E.D.N.Y. Mar. 16, 2016) (noting that the fee sought was "less than the typical contingency fee percentage of 33 1/3%"), *adopted by* 2016 WL 5390123 (E.D.N.Y. Sept. 26, 2016).

---

[6] Plaintiffs' Counsel has not provided contemporaneous timekeeping records in support of their request but has represented that the amount requested is "lower than the lodestar amount Plaintiffs would seek to recover at trial, currently estimated at $70,000.00 . . . ." (Letter 10.) The normal practice in this district is that counsel provide contemporaneous timekeeping records in support of their requested attorney fees. *See Nights of Cabiria*, 96 F. Supp. 3d at 181 ("In this circuit, a proper fee request entails submitting contemporaneous billing records documenting, for each attorney, the date, the hours expended, and the nature of the work done.") (quotation marks omitted). However, the Court finds that Counsel's representation is credible based on its review of the docket and the Settlement Agreement and, given the extraordinarily low fees requested, will approve the request in the absence of any timekeeping records.

## III. Conclusion

For the foregoing reasons, the Parties' request for approval of their Proposed Settlement Agreement is granted.  The Clerk of the Court is respectfully directed to close this case.

SO ORDERED.

DATED:      February 3, 2023
               White Plains, New York

_____
KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE